**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

**RAY D SHIPP**
Po Box 23530
Baltimore, Maryland 21203
                *Plaintiff*,

*vs.*

**AMAZON.COM SERVICES LLC**
Serve: CSC-Lawyers Incorporating Service
Company, Resident Agent
7 St. Paul Street
Suite 820
Baltimore, Maryland 21202

**AMAZON.COM, INC**
Corporation Service Company,
Resident Agent
300 Deschutes SW
Suite 208 MC-CSC1
Tumwater, Washington 98501

**AMAZON LOGISTICS, INC.**
Serve: CSC-Lawyers Incorporating Service
Company, Resident Agent
7 St. Paul Street
Suite 820
Baltimore, Maryland 21202

**AMAZON WEB SERVICES, INC.**
Serve: Corporation Service Company,
Resident Agent
300 Deschutes SW
Suite 208 MC-CSC1
Tumwater, Washington 98501

                *Defendants*.

Civil Action No. 22-2484

**COMPLAINT and
DEMAND FOR JURY TRIAL**

Plaintiff Ray Shipp ("Plaintiff"), by and through his undersigned counsel, hereby files this Complaint against Defendants Amazon.com, Inc., Amazon Logistics, Inc., and Amazon Web Services, Inc. (collectively, "Defendants" or "Amazon") alleging as follows:

## NATURE OF THE ACTION

1.      This is a complaint for employment discrimination and retaliation brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., as amended ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981").

## PARTIES

2.      Plaintiff is a Black man and a citizen of the State of Maryland. At all times pertinent hereto, Plaintiff was employed by Amazon in Baltimore, Baltimore County, Maryland.

3.      Defendant Amazon.com, Inc., is a corporate entity based in the State of Washington. Amazon.com, Inc. is an employer under Title VII. At all times pertinent hereto, Defendant Amazon.com, Inc. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

4.      Defendant Amazon.com Services LLC, is a corporate entity based in the State of Washington. Amazon.com Services LLC, is an employer under Title VII. At all times pertinent hereto, Defendant Amazon.com Services LLC, has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year

5.      Defendant Amazon Logistics, Inc. is a corporate entity based in the State of Washington. Defendant Amazon Logistics, Inc. is an employer under Title VII. At all times

pertinent hereto, Defendant Amazon Logistics Inc. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

6.      Defendant Amazon Web Services, Inc. is a corporate entity based in the State of Washington. Defendant Amazon Web Services, Inc is an employer under Title VII. At all times pertinent hereto, Defendant Amazon Web Services, Inc has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, specifically, Title VII and Section 1981. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1343.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Baltimore County, Maryland, which is situated within this judicial district and division.

9.      Plaintiff has met all administrative prerequisites to maintaining his Title VII claim in that he timely filed a charge of unlawful race discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 531-2020-02936 (Exhibit 1). EEOC issued a Determination and Notice of Rights on July 01, 2022 (Exhibit 2), which was subsequently received by Plaintiff. The current action has been timely filed.

## FACTS

10.     On information and belief, in or around January 2020, Amazon acquired a Pinnacle Logistics facility located at 27350 Mathison Way, Baltimore, Maryland 21240, a ground handling operation at the Baltimore/Washington International Thurgood Marshall Airport (the "Facility").

11.     In or around February 2020, Plaintiff, a Pinnacle Logistics Ramp Manager earning $30 per hour, was asked to transition to Amazon by Amazon Operations Manager Davina Treadwell, a White woman, and Operations Manager Stephanie Drake, a White woman.

12.     Operations Manager Treadwell, Operations Manager Drake, General Manager Dovie Majors, a White woman, and Area Manager Shawn Wright, a White man, verbally promised Plaintiff a promotion to an Area Manager position at the Facility if he transitioned to become an Amazon employee.

13.     On or around March 1, 2020, Plaintiff notified General Manager Majors and Area Manager Wright of his decision to transition to Amazon, relying on Amazon's promise of an Area Manager position.

14.     In or around March 2020, Amazon Human Resources Representative Megan Barr notified Plaintiff that Amazon only had Processing Assistant positions available, and that Amazon would promote Plaintiff when an Area Manager position became available.

15.     In or around March 2020, Plaintiff agreed to transition to Amazon as a Processing Assistant earning $17 per hour, relying upon Amazon's promise of promotion.

16.     Plaintiff timely submitted all required onboarding documentation, including a Form I-9 and other required documentation needed for Amazon to acquire Plaintiff's Security Identification Display Area badge as required by the Maryland Aviation Administration.

17.     Plaintiff began working for Amazon as a Processing Assistant on or around March 14, 2020, when Amazon assumed control of the Facility.

18.     In or around June 2020, Black Warehouse Associates notified Plaintiff that since February 2020, Amazon, through Area Manager Wright had (1) wrongfully terminated Black Warehouse Associates and other Black employees, including but not limited to Earl Taft and Shallow King, for minor safety violations; and (2) retrained White Warehouse Associates and other employees, including but not limited to Dorothy Jackson, a White woman, instead of termination, for similar and more egregious safety violations than those committed by Black Warehouse Associates who were terminated.

19.     For example, Shallow King, a Black man, walked to chock the wheels of a plane that had just arrived and was parked at the Facility as the engine powered down.

20.     Chocking the wheels is when a wedge-shaped wooden block or metal structure is placed in front of an airplane to prevent its motion on the ground.

21.     Walking to chock the wheels while the engine powered down was a minor safety violation that should have resulted in a verbal warning. However, Area Manager Shawn escalated the violation to a tier 1 safety violation. Tier 1 violations require immediate termination. Amazon terminated King.

22.     Furthermore, Earl Taft, a Black man, walked to chock the wheels of a plane that had just arrived and was parked at the Facility as the engine powered down.

23.     Walking to chock the wheels while the engine powered down was a minor safety violation that should have resulted in a verbal warning. However, Area Manager Wright escalated the violation to a Tier 1 violation. Amazon terminated Taft.

24.     Meanwhile, Dorothy Jackson, a White employee, struck Marlene Boyd, a Black employee, with a transport vehicle, causing injury to Boyd. Area Manager Wright retrained Jackson on operator safety instead of terminating Jackson's employment. Area Manager Wright

gave Boyd, whom Jackson struck, a tier 1 safety violation for the incident and Boyd was subsequently terminated.

25.     Although Dorothy Jackson committed what should have been classified as a tier 1 safety violation, on information and belief, she was not disciplined for her violation at all, or at least not as harshly as Black employees who committed lesser violations.

26.     Subsequently, Dorothy Jackson, nearly struck another Warehouse Associate while operating a transport vehicle. Even though Jackson had a similar safety violation on her record, and the second similar violation should have led to mandatory termination, Area Manager Wright issued Jackson a three-day suspension instead of termination.

27.     On another occasion, Dorothy Jackson, while operating a transport vehicle, damaged a $3 million product. Yet, Area Manager Wright again retrained Jackson on operator safety instead of terminating her employment.

28.     On information and belief, Dorothy Jackson incurred more than six safety violations. However, she received retraining each time while Amazon terminated similarly situated Black Warehouse Associates for fewer and less egregious safety violations.

29.      On or around June 14, 2020, Plaintiff complained of Area Manager Wright's above-described discriminatory conduct to Facility General Manager Majors.

30.     The following day, Area Ramp Manager Tyler Nechanick, a White man, Warehouse Manager Kavasio, and Human Resources Representative Barr, required Plaintiff to meet with them in the Human Resources office.

31.     Plaintiff, the most experienced Ramp Processing Assistant in the Facility, was transferred to the warehouse and away from the ramp the day after he reported Area Manager Wright's conduct to General Manager Majors.

32.     Plaintiff objected to the transfer, stating that he believed the transfer was because he reported Area Manager Wright's discriminatory conduct.

33.     Area Ramp Manager Nechanick and Human Resources Representative Barr gave Plaintiff an ultimatum of choosing to report to the warehouse or suffer immediate termination.

34.     Plaintiff reported to the warehouse so that he could maintain his employment and because he feared further retaliation if he continued to speak out.

35.     Not only was Plaintiff stripped of his duties, but Amazon also stripped Plaintiff of an opportunity for promotion to Area Ramp Manager, a position Amazon had promised Plaintiff. Instead, Amazon promoted Processing Assistant Rob, a White man, to Area Manager while Plaintiff worked in the warehouse.

36.     Plaintiff had trained Rob while they were both employed at Pinnacle Logistics and had continued to train Rob since Plaintiff transitioned to Amazon.

37.     In or around June 2020, Plaintiff learned from Ramp Manager Gene, an Asian man, that Gene had recently nominated Plaintiff for an Area Manager promotion in his department. However, Plaintiff was not given that promotion.

38.     In or around July 2020, while Plaintiff worked in the warehouse, Plaintiff learned from Warehouse Supervisor Domicia that Amazon placed him on a performance improvement plan. At the time, Amazon had not notified Plaintiff that he had been put on a performance improvement plan and Plaintiff was not aware of the details of the plan.

39.     Plaintiff complained to Warehouse Supervisor Domicia that he believed that Amazon placed him on the performance improvement plan only after he complained of Area Manager Wright's discriminatory conduct against Black employees. Plaintiff had never received

a negative performance evaluation up to that point, and had been promised a promotion based on his performance and qualifications, before he complained of discrimination.

40.     Warehouse Supervisor Domicia agreed, expressing that Plaintiff had been a top performer while working in the warehouse. Warehouse Supervisor Domicia was unaware of who placed Plaintiff on the performance improvement plan, so she subsequently discharged Plaintiff from the performance improvement plan.

41.     In or around July 2020, Ramp Manager Gene notified Plaintiff that he could return to the ramp to continue his Ramp Processing Assistant duties.

42.     In or around July 2020, following Plane Mechanic Darien Cool's instruction, Plaintiff directed a Warehouse Associate to enter the cargo area of a parked plane to release certain locks that prevented Plaintiff from loading the plane.

43.     The Warehouse associate completed the task, but Plaintiff was subsequently issued a two-day suspension for a safety violation by Human Resources Representative Barr. Plaintiff verbally objected to the suspension because he had only followed the instructions of senior Plane Mechanic Cool, who was the most senior personnel present when the plane was grounded for repair and refueling. It was protocol for Plaintiff to adhere to the instructions of Plane Mechanic Cool.

44.     Amazon did not offer Plaintiff an opportunity for retraining in lieu of suspension, as it had done for Dorothy Jackson, in the face of her numerous safety violations.

45.     On or around September 27, 2020, during a morning meeting in the warehouse, an Area Manager whom Plaintiff did not know, offered the entire team overtime as Amazon was entering peak season, a high volume period.

46.     Plaintiff reported to the Facility that night to work overtime.

47.     Shortly after the overtime shift began, Ramp Processing Assistant Rob, a White man, confronted Plaintiff stating that Plaintiff was not permitted to work overtime.

48.     On information and belief, no similarly situated White employees, or employees who had not previously complained of discrimination, were told they were not permitted to work overtime.

49.     Ramp Processing Assistant Rob escorted Plaintiff to the Human Resources office, where Plaintiff met with Rob, Human Resources Representative Megan Barr, Area Ramp Manager Tyler, and Area Manager Shawn. Amazon accused Plaintiff of working unauthorized overtime.

50.     Plaintiff explained that the Area Manager had offered overtime to all the employees on his team during the earlier shift.

51.     Amazon terminated Plaintiff's employment during the meeting for the pretextual reason of working unauthorized overtime.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. §§ 2000e, *et seq*.
### [Title VII– Race Discrimination]

52.     Plaintiff adopts by reference and incorporates paragraphs 1 through 51 as if fully set forth herein.

53.     Plaintiff was, at all times relevant hereto, employed by Defendants.

54.     As employers within the meaning of Title VII, Defendants at all times owed a duty to Plaintiff not to discriminate against him with respect to employment, promotion, or other conditions or privileges of employment due to his race.

55.     Plaintiff is a Black man.

56.     At all relevant times, Plaintiff met Defendants' legitimate performance expectations as he (1) was never placed on a performance improvement plan before Amazon's retaliation and discrimination; and (2) was recognized as the top Ramp Processing Assistant, amongst other things.

57.     Defendants discriminated against Plaintiff based on his race by (1) failing to retrain Plaintiff instead of suspending him and ultimately terminating his employment; (2) placing Plaintiff on a performance improvement plan; and  (3) failing to promote Plaintiff to a position commensurate with his skills and abilities, as promised.

58.     Amazon treated similarly situated employees outside Plaintiff's protected category more favorably. For example, Plaintiff committed a minor safety violation and was subject to immediate suspension for his first safety violation. At the same time, Amazon retrained Dorothy Jackson and other White employees many times before they were subject to suspension or termination after they committed similar or more serious safety violations.

59.     Furthermore, Plaintiff transitioned to Amazon on the promise of an Area Manager position. Not only did Amazon fail to keep its promise to Plaintiff, but Amazon also failed to promote Plaintiff to Area Manager when a position became available and instead promoted Rob, a less experienced person outside of Plaintiff's protected category.

60.     Defendants' conduct had the purpose and effect of substantially interfering with Plaintiff's employment.

61.     In discriminating against Plaintiff, Amazon acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

62.     As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

63.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT II

### 42 U.S.C. §§ 2000e, *et seq*.
### [Title VII - Retaliation]

64.     Plaintiff adopts by reference and incorporates paragraphs 1 through 51 as if fully set forth herein.

65.     Plaintiff engaged in protected activity under Title VII when he complained of race discrimination to General Manager Dovie Majors and when he complained of retaliation to Warehouse Supervisor Domicia.

66.     Defendants retaliated against Plaintiff after he engaged in protected activity, subjecting Plaintiff to adverse actions, including (1) assigning Plaintiff to the warehouse; (2) failing to promote Plaintiff to Area Ramp Manager; (3) subjecting Plaintiff to a performance improvement plan; and (4) and terminating his employment.

67.     There was a causal connection between Plaintiff's protected activity and the adverse actions to which he was subjected.

68.     In retaliating against Plaintiff, Amazon acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

69.     As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

70.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants for damages, costs, and such other and proper relief as this Court deems appropriate.

### COUNT III

### 42 U.S.C. § 1981
### [Race Discrimination]

71.     Plaintiff adopts by reference and incorporates Paragraphs 1 through 51 as if fully set forth herein.

72.     Plaintiff was, at all times relevant hereto, employed by Defendants.

73.     As employers within the meaning of Title VII, Defendants at all times owed a duty to Plaintiff not to discriminate against him with respect to employment, promotion, or other conditions or privileges of employment due to his race.

74.     Plaintiff is a Black man.

75.     At all relevant times, Plaintiff met Defendants' legitimate performance expectations as he (1) was never placed on a performance improvement plan before Amazon's discrimination and retaliation; and (2) was recognized as the top Ramp Processing Assistant, amongst other things.

76.     Defendants discriminated against Plaintiff based on his race by (1) failing to retrain Plaintiff instead of suspending him and ultimately terminating his employment; (2) placing

Plaintiff on a performance improvement plan; and (3) failing to promote Plaintiff to a position commensurate with his skills and abilities, as promised.

77.     Amazon treated similarly situated employees outside Plaintiff's protected category more favorably. For example, Plaintiff committed a minor safety violation and was subject to immediate suspension for his first safety violation. At the same time, Amazon retrained Dorothy Jackson and other White employees many times before they were subject to suspension or termination after they committed similar or more serious safety violations.

78.     Furthermore, Plaintiff transitioned to Amazon on the promise of an Area Manager position. Not only did Amazon fail to keep its promise to Plaintiff, but Amazon also failed to promote Plaintiff to Area Manager when a position became available and instead promoted Rob, a less experienced person outside of Plaintiff's protected category.

79.     Defendants' conduct had the purpose and effect of substantially interfering with Plaintiff's employment and created a discriminatory employment environment.

80.     In discriminating against Plaintiff, Amazon intentionally, with malice and reckless indifference to federal, state, and local laws prohibiting racial discrimination in employment, denied and deprived the Plaintiff of his equal rights; and denied and deprived the Plaintiff of his equal rights to enjoyment of all benefits, privileges, terms, and conditions of the Plaintiff's employment.

81.     The denial of the Plaintiff's equal rights under the law, adversely effected the terms, conditions, and privileges of his employment.

82.     The Defendant had actual and/or constructive knowledge about the denial and deprivation of the Plaintiff's equal rights under the law, and not only failed to take prompt and adequate remedial action but participated in denying the Plaintiff his equal rights under the law.

83. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

84. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT IV

### 42 U.S.C. § 1981
### [Retaliation]

85. Plaintiff adopts by reference and incorporates Paragraphs 1 through 51 as if fully set forth herein.

86. Plaintiff engaged in protected activity when he complained of race discrimination to General Manager Dovie Majors and when he complained of retaliation to Warehouse Supervisor Domicia.

87. Defendants retaliated against Plaintiff after he engaged in protected activity, subjecting Plaintiff to adverse actions, including (1) assigning Plaintiff to the warehouse; (2) failing to promote Plaintiff to Area Ramp Manager; (3) subjecting Plaintiff to a performance improvement plan; (4) and terminating his employment.

88. There was a causal connection between Plaintiff's protected activity and the adverse actions to which he was subjected.

89. In retaliating against Plaintiff, Amazon acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

14

90.    The denial of the Plaintiff's equal rights under the law, adversely effected the terms, conditions, and privileges of his employment.

91.    As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

92.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants for damages, costs, and such other and proper relief as this Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order which will:

A.    Declare the conduct engaged in by the Defendants to be in violation of Plaintiff's rights under federal law;

B.    Enjoin Defendants from engaging in further such unlawful conduct;

C.    Require Defendants to reinstate Plaintiff to his position, and provide him with, the promotion to Manager, which he was promised, as well as take such affirmative action as is necessary to ensure that the effects of the unlawful employment practices taken against Plaintiff are eliminated and do not continue to affect Plaintiff;

D.    Award Plaintiff compensatory damages against the Defendants;

E.    Award Plaintiff damages for his emotional distress against the Defendants;

F.    Award Plaintiff punitive damages against the Defendants;

15

G.     Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

H.     Award Plaintiff his reasonable costs and attorneys' fees;

I.     Award Plaintiff such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all counts and claims triable by jury as raised by this Complaint.

DATED:  September 29, 2022

Respectfully Submitted,

LAW OFFICES OF KIM PARKER, P.A.

/s/ Kim Parker
_____
Kim Parker, Esquire
Fed Bar No.: 23894
2123 Maryland Avenue
Baltimore, Maryland 21218
410-234-2621
F: 443-486-1691
E: kp@kimparkerlaw.com

COUNSEL FOR PLAINTIFF