IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAY D. SHIPP, | * | |
| | * | Civil Action No. CCB-22-2484 |
| v. | * | |
| AMAZON.COM SERVICES LLC, *et. al.* | * | |
| | ************* | |

## MEMORANDUM

Pending before the court is defendants Amazon.com Services LLC, Amazon.com, Inc., Amazon Logistics, Inc., and Amazon Web Services, Inc.'s (collectively, "Amazon") partial motion to dismiss the amended Complaint. (ECF 11, Mot. to Dismiss). Specifically, Amazon seeks to dismiss plaintiff Ray D. Shipp's failure-to-promote claim. (*Id.* at 1). The motion has been fully briefed and no oral argument is required. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Amazon's motion will be granted.

## BACKGROUND

When reviewing a motion to dismiss, this court accepts as true the facts alleged in the challenged complaint. *See Williams v. Kincaid*, 45 F.4th 759, 765-66 (4th Cir. 2022). Ray Shipp began working for Amazon in March of 2020 as a Ramp Processing Assistant at a ground handling operation facility located at the Baltimore/Washington International Thurgood Marshall Airport. (ECF 9 at ¶¶ 14-19, Am. Compl.) He accepted the position as a result of an oral promise made to him by several Amazon managers that he would be promoted to an Area Ramp Manager in the future. (*Id.* at ¶¶ 16-19). On June 14, about three months after beginning his new role at Amazon, Mr. Shipp complained to the facility's General Manager Dovie Majors about what he believed to

1

be discriminatory treatment by Area Manager Shawn Wright towards Black warehouse associates at the facility. (*Id.* at ¶¶ 22-33).

A day after making the complaint, Mr. Shipp was required to meet with various Amazon managers and a Human Resources Representative where he was informed that he would be transferred to a warehouse and stripped from his current duties and current position at the ramp. (*Id.* at ¶¶ 34-35, 39). Mr. Shipp objected to the transfer and stated that he believed this action was a direct consequence of his decision to report Area Manager Wright's discriminatory conduct. (*Id.* at ¶ 36). Despite making such an objection, Mr. Shipp was given an ultimatum – he could choose to report to the warehouse or suffer immediate termination. (*Id.* at ¶ 37). Mr. Shipp chose to report to the warehouse so that he could maintain his employment, and Amazon passed over Mr. Shipp for a promotion to the position of Area Ramp manager, promoting another employee instead. (*Id.* at ¶ 39).

In July of 2020, while working at the warehouse, Mr. Shipp was notified that he had been placed on a performance improvement plan ("PIP"), the details of which he was not aware. (*Id.* at ¶ 42). Up until that point, Mr. Shipp had never received a negative performance evaluation and believed his PIP placement was a direct consequence of his earlier complaint. (*Id.* at ¶ 43). He communicated this concern to the Warehouse Supervisor who agreed that Mr. Shipp had been a top performer while working in the warehouse and subsequently discharged him from the PIP. (*Id.* at ¶¶ 43-44). Later, Mr. Shipp was notified that he could return to the ramp and continue his duties as a Ramp Processing Assistant. (*Id.* at ¶ 45).

On one occasion after returning to the ramp, Mr. Shipp, following the instructions of a plane mechanic at the facility, directed a warehouse associate to enter the cargo area of a parked plane to release certain locks so that he could load the plane. (*Id.* at ¶ 46). This was a safety

violation, and despite believing that he was following company protocol by adhering to the instructions of the mechanic, the most senior personnel present at the time, Mr. Shipp was issued a two-day suspension and no opportunity for retraining as had been done for similarly situated white employees who had committed similar or more serious safety violations. (*Id.* at ¶¶ 46-48, 62).

In September of 2020, during a meeting at the warehouse, an Area Manager offered the entire team, including Mr. Shipp, overtime as Amazon was entering its peak season. (*Id.* at ¶ 49). That night, Mr. Shipp reported to the facility to work overtime but was informed by a Ramp Processing Assistant that his overtime was unauthorized. (*Id.* at ¶¶ 50-51). Mr. Shipp was thereupon escorted to the human resources office where he explained, to no avail, that an Area Manager had offered overtime to all the employees on his team during an earlier shift. (*Id.* at ¶¶ 53-54). He was subsequently terminated. (*Id.* at ¶ 55).

On November 13, 2020, Mr. Shipp filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation, and focusing on two adverse actions including: (1) his being placed on a performance improvement plan, and (2) his employment termination. (*Id.* at ¶¶ 9-10; ECF 9-1, Ex. 1, EEOC Charge Form). Absent from the EEOC charge, however, is any mention of Amazon's failure to promote Mr. Shipp. The EEOC issued Mr. Shipp a Determination and Notice of Right to Sue on July 1, 2022, (ECF 9 at ¶ 9), and Mr. Shipp initiated this suit on September 28, 2022, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended ("Title VII"), and 42 U.S.C. § 1981 ("Section 1981"). (ECF 1, Compl.). He filed an amended complaint on November 28, 2022. (ECF 9). Amazon filed a motion to partially dismiss the complaint on December 12, 2022, arguing that "the absence of any failure-to-promote claim in the

[EEOC] Charge—an administrative prerequisite to pursuing such a claim under Title VII in court—means that [Mr. Shipp] is now barred from pursuing such a failure-to-promote claim in this civil action." (ECF 11-1 at 2, Mem. in Support of Mot. to Dismiss). Mr. Shipp responded on December 27, 2022, (ECF 12, Response), and Amazon replied on January 20, 2023 (ECF 17, Reply).

## LEGAL STANDARD

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

Amazon argues that Mr. Shipp cannot pursue a failure-to-promote claim in this court because he failed to exhaust his administrative remedies by including this claim, and any factual

4

allegations related to an alleged non-promotion, in his charge with the EEOC. (ECF 11-1 at 1-3, 6). In addition, Amazon points out that the complaint's discussion of the alleged failure-to-promote references a different timeframe than the one indicated in the EEOC Charge. (*Id.* at 6). While the complaint asserts that the alleged failure-to-promote took place in March of 2020, Mr. Shipp states in the EEOC Charge that the earliest date on which any alleged wrongdoing occurred was June 14, 2020. (*Id.*)

A plaintiff is required to exhaust his administrative remedies by filing a charge with the EEOC before he can file a suit in federal court under Title VII. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). "The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint." *Id.* (quoting *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014)). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* (quoting *Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019)). "A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure-to-promote—and the claim encompasses another type." *Id.* (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005)).

Mr. Shipp concedes that his EEOC charge did not mention any promotion-related claim but maintains that the claim is 1) reasonably related to the original charges and 2) "came up" during the EEOC's investigation, such that Mr. Shipp can be found to have exhausted his failure-to-promote claim. (ECF 12 at 6-7). The court will address each argument in turn.

    a. Reasonably Related

Amazon relies on *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022) to support the proposition that Mr. Shipp's failure-to-promote claim is conclusory and unsupported by any facts or analysis within the amended complaint, and as such is not "reasonably related to" the EEOC charge's allegations of discriminatory performance management and termination. (ECF 11-1 at 6).

In response to a summary judgment motion, the plaintiff in *Walton v. Harker* attempted to raise for the first time a claim based on failure-to-promote notwithstanding that the claim was not presented to the EEOC. 33 F.4th at 170. In affirming the lower court's finding that the plaintiff was procedurally barred from pursuing her failure-to-promote claim because she did not raise it at the administrative level, the Fourth Circuit concluded that this new claim was not "logically related" to "her administrative case before the EEOC [which] focused solely on her view that [her] realignment *felt* like a demotion." *Id.* at 174. According to the court, the demotion claim is a distinct type of claim which requires that it be explicitly raised and investigated. *Id.* at 172-74. Because the failure-to-promote claim arose for the first time in the litigation phase, the EEOC, having no basis for investigating the claim, never considered it, and the defendant was not put on notice that the failure-to-promote claim was one against which it had to defend itself. *Id.* at 173.

A similar analysis applies in this case. When Mr. Shipp filed a charge with the EEOC he focused entirely on two adverse employment actions: his PIP and his termination. The two-paged charge form that Mr. Shipp completed and filed with the EEOC contained a "discrimination based on" section in addition to another section titled "the particulars are." (*See* ECF 9-1, Ex. 1 at 2). The "discrimination based on section" provides several boxes – boxes labeled "race" and "retaliation," among other categories – that employees may check or mark in order to indicate the unlawful basis of the alleged discrimination. (*See id.*). "The particulars are" section includes a

blank space where an employee may provide a short description of the alleged discriminatory events that took place. (*See id.*). On the charge form that Mr. Shipp completed, he marked the "race" and "retaliation" boxes specifying why he believed he was discriminated against but discussed only his PIP and termination within "the particulars are" section, failing to include any mention of a promise or failure-to-promote. (*See id.*); *see, e.g.*, *Rausch v. Alta Cima Corp.*, No. 7:21-CV-00476, 2023 WL 2227727 at *4 (W.D. Va. Feb. 24, 2023) (finding that where plaintiff "did not check the box for 'retaliation' or for 'other' to specify a . . . retaliation, failure-to-accommodate, or interference" charge, nor discuss facts reasonably related to either of these claims on the EEOC charge form, plaintiff did not have standing to pursue these claims which she failed to administratively exhaust).[1]

Like in Walton, Mr. Shipp's failure-to-promote claim is a distinct type of claim, distinguishable from the PIP and termination claims he raised with the EEOC. Therefore, Mr. Shipp was required to explicitly raise the failure-to-promote claim with the EEOC so as to eliminate the risk that broad terms like discrimination and retaliation, terms that he used on the EEOC charge form when describing his placement on the PIP and his termination, "could encompass 'a limitless number of other factual worlds'" ultimately rendering the exhaustion requirement "a nullity," and undermining the purposes of notice. *Walton*, 33 F.4th at 174 (quoting *Chacko*, 429 F.3d at 512–13). Notice is a paramount goal of Title VII's exhaustion requirements. There is nothing in the EEOC charge that would imply failure-to-promote in order to give Amazon notice in this instance nor is there any evidence showing that the EEOC in fact investigated this charge.[2] *See Walton*, 33 F.4th at 174; *see also Sloop v. Mem. Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999). Thus, Mr. Shipp's failure-to-promote claim, a distinct type of claim, is not

---

[1] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.
[2] The plaintiff had access to the EEOC file but did not submit any documents in support of his argument.

reasonably related to the claims charged in his original EEOC complaint such that it may be maintained in this lawsuit.

    b. Developed by Reasonable Investigation of the Original Complaint

Mr. Shipp alleges that five specific topics relevant to his failure-to-promote claim "came up" during the EEOC's investigation of the original charge such that this claim may be maintained in the present lawsuit. (ECF 9 at ¶ 13). According to Mr. Shipp, the five relevant topics include: (1) the promotions process and how promotions are awarded; (2) whether Amazon gives appropriate titles to employees based on their experience; (3) the qualifications required for managers at Amazon; (4) that Amazon required Mr. Shipp to train less knowledgeable managers while refusing to give him a manager title or manager pay; and (5) that Amazon promised to promote Plaintiff, but then failed to do so because of Plaintiff's race. (*Id.*).

Amazon counters that mention of these five alleged topics by Mr. Shipp is "the sort of conclusory statement" that this court need not credit. (ECF 17 at 5). Furthermore, Amazon once again stresses that without including a failure-to-promote claim in his original EEOC charge or without seeking to amend his charge with the EEOC to include such a claim, Mr. Shipp "never placed Amazon on notice of any claim of discriminatory non-promotion during the administrative phase," and thus failed to exhaust the claim. (ECF 11-1 at 8-9). The court agrees.

Mr. Shipp does not provide any concrete evidence to the court explaining or showing in what manner and by which methods these above topics came up when the claim was before the EEOC. This is insufficient for the purposes of exhaustion. *See Wheeler v. Becerra*, 2021 WL 3288079, at *4 (D.D.C. Aug. 2, 2021) ("The fact that one sentence submitted in the course of the agency's investigation mentioned [the disputed claim] is not sufficient for exhaustion purposes . . . [the plaintiff] did not raise [the disputed claim] in either the original complaint or through seeking

to amend the claims under investigation. He gave [the disputed claim] only a cursory reference in one document submitted in the course of the investigation. He has thus failed to satisfy Title VII's exhaustion requirement."). Accordingly, Mr. Shipp has failed to show the court that his failure-to-promote claim was developed by reasonable investigation of the original charge such that it may be maintained in a subsequent Title VII lawsuit.

## CONCLUSION

For the reasons stated above, the court will grant Amazon's motion to partially dismiss the complaint. A separate Order follows.

 07/18/2023 
Date

/s/
Catherine C. Blake
United States District Judge